§JS 44 (Rev. 11/04)                                    **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
Jared Massey, 900 West 2500 South, Vernal, UT 84078

**DEFENDANTS**
Jon Gardner, Utah Highway Patrol Trooper, et al

**(b)** County of Residence of First Listed Plaintiff   Uintah
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Robert B. Sykes & Associates
311 South State Street, Suite 240

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty |  |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other |  |  | |
|  | ☐ 550 Civil Rights |  |  | ☐ 950 Constitutionality of State Statutes |
|  | ☒ 440 Other Civil Rights / ☐ 555 Prison Condition |  |  | |

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 USC Sec. 1983 and 1988
Brief description of cause:
Excessive force

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____ DOCKET NUMBER _____

DATE 01/19/2008
SIGNATURE OF ATTORNEY OF RECORD
[signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

ROBERT B. SYKES (#3180)
ALYSON E. CARTER (#9886)
SCOTT R. EDGAR (#11562)
**ROBERT B. SYKES & ASSOCIATES, P.C.**
311 South State Street, Suite 240
Salt Lake City, Utah 84111
Telephone (801) 533-0222
Facsimile (801) 533-8081
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| JARED MASSEY, | |
| Plaintiff, | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| JON GARDNER, UTAH HIGHWAY PATROL TROOPER, and JOHN AND JANE DOES 1-10, | Civil No. _____ |
| | Judge: _____ |
| Defendants. | |

Plaintiff Jared Massey ("Plaintiff") complains and alleges for a cause of action against Defendants as follows:

### JURISDICTION AND VENUE

1. This action arises under the United States Constitution and federal law, particularly under the provision of the Fourth and Fourteenth Amendments of the Constitution of the United States, and 42 U.S.C. §§ 1983, and 1988.

2. This action seeks redress for violations of the civil rights laws of the United States, and jurisdiction is therefore invoked pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 1983.

3. The claims made in this Complaint occurred and arose in the State of Utah, in this District and in the Central Division. Venue is therefore proper under 28 U.S.C. § 1391 and 28 U.S.C. § 1331.

4. Plaintiff is seeking damages under federal law pursuant to the claim for relief below, in amounts to be proved at trial.

## PARTIES

5. Plaintiff Jared Massey is a citizen of the United States of America and a resident of Vernal City, County of Uintah, State of Utah. Lauren Massey is Jared Massey's wife.

6. Defendant JON GARDNER ("Gardner") at all times relevant herein was a trooper employed by the Utah State Highway Patrol ("UHP"), a governmental entity operating under the Department of Public Safety, State of Utah. As part of its corporate powers, and at all times relevant herein, the Defendant officer was an employee of the UHP.

7. This action is brought against Gardner in his individual capacity. His authority to act was derived from Utah State law and/or the commands and directives of his superiors. All of the acts of the individuals and entities listed herein

2

were performed under color of the laws, statutes, ordinances, regulations, policies, customs, and usages of the State of Utah, and each said individual is a person liable under 42 U.S.C. § 1983.

8. Plaintiff will serve notice of his pendent state claims against the Defendant pursuant to Utah law. These claims will be amended into this Complaint at a later time. However, Plaintiff denies that notice is required of any of the current claims in this Complaint since all current claims deal with constitutional violations under 42 U.S.C. § 1983 and other statutes, and state law notice of such claims is not required.

## FACTUAL ALLEGATIONS

9. Jared Massey was pulled over, allegedly for speeding, on U.S. Highway 40 on or about September 14, 2007, by Utah Highway Patrol Trooper, Jon Gardner (hereafter, the "traffic stop").

10. The traffic stop was videotaped by a dashboard camera apparently installed in the UHP cruiser driven by Trooper Gardner on or about September 14, 2007. The whole incident can be viewed on "www.youtube.com" by searching for "Massey Utah." Furthermore, Massey summarized the events in a letter to the Utah Highway Patrol dated November 27, 2007, which is attached hereto as Exhibit A.

11. Trooper Gardner approached Massey's SUV and apparently told him that he was speeding in a 40 mph zone.

12. At the time Gardner first pulled the Massey vehicle over, based upon best knowledge, information and belief, Gardner ran the plates through the UHP identification system, and knew that Massey was a local resident with no warrants or other criminal activities attributed to him or his vehicle.

13. Massey disagreed with the officer's assessment that he was speeding because he believed that his vehicle had not yet reached a 40 mph speed limit sign in a construction area. Gardner then returned to his cruiser to write the citation.

14. Gardner again approached the Massey vehicle and asked Massey to sign the citation. Massey declined to sign the citation because he wanted first to show the officer that the 40 mph sign down the road was not where the officer had thought, to the effect that Massey had not been traveling over 40 mph in the 40 mph zone.

15. Signing a citation is not required under Utah law. Gardner could have left the citation with Massey with the exact same effect as having Massey sign it.

16. Immediately after Massey's request, Trooper Gardner asked Massey to exit the vehicle, as if to allow Massey to show him what he meant. Gardner walked back to his cruiser to place his citation book on his bumper, as Massey exited his vehicle.

17. Gardner never advised Massey, prior to Massey's exiting the vehicle, that he was under arrest, or that Gardner intended to put Massey under arrest after he exited the vehicle.

18. After Massey exited the vehicle, he walked calmly toward the officer's cruiser, pointing to the sign down the road with his left hand, and stating that he did not think that he had been speeding prior to the 40 mph sign. While Massey was pointing forward with his left hand, his right hand was at his side, with the thumb hooked inside of his right pant pocket, but the right hand outside the pocket.

19. Up until this point, where Massey is walking toward the officer's car and pointing, the officer had never told Massey he was under arrest or was about to be put under arrest.

20. As Massey was pointing back to the sign in question, and without warning, or telling Massey he was under arrest, the officer belligerently demanded that Massey "turn around and put [his] hands behind [his] back," while simultaneously drawing a pistol and pointing it directly at Massey. Massey, startled at seeing the weapon, asked "what's wrong with you?" and began walking away. Gardner still never told Massey that he was under arrest, but continued to point his weapon at Massey without explaining why, without explaining that it was a taser pistol and without explaining that he was arresting Massey. Gardner demanded again that Massey put his hands behind his back, and then immediately fired his taser into Massey's back, without giving Massey any reasonable opportunity to understand or comply with the request. This stunned Massey, who fell hard on to the highway, screaming in pain, while Trooper Gardner tauntingly said "hurts doesn't it?" Massey struck his head very hard on the

5

pavement, which was due to the fact that the taser causes a complete loss of the ability to maintain muscle control, causing an individual to drop like a free weight.

21. Only about seven seconds elapsed between the time Gardner first told Massey to put his hands behind his back and drew a weapon on Massey, and the tasering.

22. After Massey was tasered and lying on his back writhing with pain, Gardner chided him for "not following" his commands. He then ordered Massey to turn over on his stomach, but Massey was unable to do so immediately because of the effects of the first tasering. Gardner then tasered the helpless Massey once again, as he lay on the ground.

23. Lauren Massey, Jared Massey's pregnant wife, then got out of the vehicle screaming and crying, and objected to Trooper Gardner's abusive use of the taser. Gardner then threatened Lauren that she would be arrested if she did not get back in the vehicle.

24. Trooper Gardner then first told Massey, after he was handcuffed on the ground, that he was being "arrested" for not following Gardner's requests.

25. After Trooper Gardner put Massey in his cruiser, another officer came onto the scene. Trooper Gardner falsely told this officer that he warned Massey that he was going to be arrested and tasered if he did not comply with his requests.

Gardner also falsely told Lauren Massey, in front of the other officer, that he had warned Jared Massey that he would be tasered if he did not comply. That never happened.

## FIRST CAUSE OF ACTION

### Excessive Force - Defendant Gardner

**In Violation Of The Fourth Amendment  
Cognizable Under 42 U.S.C. § 1983**

26. Plaintiff incorporates by reference the above allegations.

27. The proper focus in determining the reasonableness of force used is on the events *immediately* confronting officers when they decide to use force. Force is not reasonable when a suspect is non-violent, not resisting, not fleeing, and poses no threat, as was the case with Massey. Furthermore, force is not permitted at all when there is no need to use force.

28. Plaintiff was unaware that he was under arrest, or about to be put under arrest, and thought he was exiting the vehicle to discuss the basis of the citation. Gardner then drew a weapon almost immediately and pointed it at Massey, who at most, had been guilty of a speeding infraction. This constitutes the *first* count of excessive force. Then, after a very brief seven seconds of interaction and commands by Trooper Gardner, and without being told that he was under arrest or about to be put under arrest, Gardner tasered Massey and caused him to fall violently to the road injuring himself. This is a *second* count of excessive force. Gardener then commanded Massey to turn over from his back to his stomach and when Massey was unable to comply fast

enough, because of the effects of the first tasering, Gardner tasered him again, even though he was helpless and defenseless. This was the *third* count of excessive force.

29. At no time did Gardner ever tell Massey that he was under arrest or would be tasered prior to the tasering, if he did not comply. Furthermore, at no time had Massey ever shown any tendency toward violence or hostility, or intent to flee, or resistance to arrest. At no time did Massey ever threaten Officer Gardner.

30. There was no need for Gardner to taser Massey because Massey was non-violent, not threatening in any way, not fleeing and not resisting arrest. Massey was never informed, prior to the tasering that he was under was under arrest. Plaintiff was totally non-violent and did not pose a threat to the safety of Gardner or others. Plaintiff had simply been pulled over for a traffic infraction (speeding). Therefore, each aspect of the force used was excessive and a violation of Plaintiff's right to be free from excessive force in an arrest.

31. The violation of Plaintiff's rights are actionable under 42 U.S.C. § 1983, and Plaintiff is entitled to judgment against Gardner in an amount to be proved at trial, plus costs and attorneys fees pursuant to 42 U.S.C. § 1988.

## JURY DEMAND

Plaintiff requests a jury trial on all issues in this case.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. For general compensatory damages in an amount to be determined at trial;

2. For special damages as are shown at trial;

3. For punitive damages against named individuals as may be allowed by law;

4. For pre-judgment interest on the damages assessed by the verdict of the jury, as allowed by law;

5. For Plaintiff's costs and reasonable attorney fees incurred herein, pursuant to 42 U.S.C. 1988; and

6. For such other and further relief as the Court deems just and proper.

DATED this 18th day of January, 2008.

ROBERT B. SYKES & ASSOCIATES, P.C.

/s/ Robert B. Sykes

ROBERT B. SYKES
ALYSON E. CARTER
SCOTT R. EDGAR
*Attorneys for Plaintiffs*

Q:\CLIENT\1960 Massey\2. P\2.1 CASE\Complaint.wpd

# EXHIBIT A

November 27, 2007

Statement to Utah Highway Patrol

**RE: Internal Investigation re: Trooper John Gardner**

I am willing to cooperate in an internal investigation involving the actions of Trooper Gardner, however in light of the trauma that my family and I have experienced I am not comfortable with the parameters demanded i.e., an in-person meeting alone without counsel and I am therefore submitting this written statement to be considered in connection with your investigation. If it is necessary for an in person meeting I want to have an attorney present with me to protect my interests.

I am pleased that the Utah Highway Patrol is finally looking into this matter. I urge you to watch the entire video more than once. You will pick up more problems with the trooper's conduct each time. I reported the incident to Trooper Gardner's sergeant at the Vernal office of the Utah Highway Patrol almost immediately after this incident occurred and requested that the matter be investigated. After more than two months went by with no action on the part of the Utah Highway Patrol it was necessary to inform the media of the actions of Mr. Gardner.

The most universal reaction from individuals who watched the entire video is one of shock and horror that a citizen would be so abused and by the callous behavior and outright lying of the trooper, not to mention his final conduct of an illegal search of my vehicle. I understand from those in the law enforcement community with whom I have spoken that it is not uncommon for a citizen to not understand the effect of signing a citation. I have learned that deputies, officers, and troopers are trained to explain citations in a calm manner and to basically obtain the signature through calm logic and rational persuasion. I refused to sign the citation only until I had received an explanation or had an opportunity to explain my position to the trooper. Rather than explain that signing the citation did not acknowledge any guilt or otherwise indicate consequences of not signing the citation the trooper invited me out of the vehicle. I believed I was getting out of the vehicle to explain my point to him about the speed limit signs and as the video shows I proceeded to attempt to do so. Only seconds after getting out of the vehicle I found myself held at gun point by Trooper Gardner. In my state of panic it appeared to me to be a regular firearm and I believed he had somehow become deranged and was about to kill me. I was trying to determine what to do to protect myself and family. It was incomprehensible to me that an officer would be pointing a gun at me when I was doing nothing more than trying to have a discussion with him about the location of speed limit signs.

The trooper without any warning and in violation of the Highway Patrol taser policy shot me with the taser causing me to fall to the ground and become injured. He then tasered me a second time for no reason while I was on the ground. According to policy the taser is <u>never</u> to be used punitively or for purposes of coercion, but may only be used to avert a potentially dangerous or injurious situation. The reason repeatedly given by Gardner for having deployed is taser is, "he didn't follow my instructions." However, he never once stated he felt threatened or

that I posed a threat to anyone.

Contrary to his statement to other officers who later arrived, he had at no time prior to shooting me stated that I was under arrest. In fact he gave me the impression that I was getting out of the vehicle to explain my point about the signs—not to be arrested.

It is obvious from the video that at no time did I threaten or do anything in any manner that could in any sense be considered as a threat to the officer or to any other person. I simply reacted to an incomprehensible act of aggression by the officer. I was doing nothing more than trying to discuss issues relating to a minor speeding ticket.

All of this senseless violence occurred while my pregnant wife and infant child were in the vehicle witnessing the traumatic scene. You can see for yourself by viewing the video the callous disregard for my wife as well as myself by the officer.

After tasering me twice for no reason the officer then handcuffed me and left me lying on the side of the road exposed to oncoming traffic in callous disregard for my safety and welfare. Why wasn't I put in the patrol car or moved away from traffic?

Tasers are not benign play things to be used by troopers on a power trip. They do result in death and in my case resulted in injury. Do those who blatantly abuse the authority of law enforcement officers and harm, rather than protect the public, deserve to wear the badge or carry the gun? Can any citizen of the state feel safe while individuals such as Mr. Gardner are allowed to bully, abuse, and injure the public under the badge of authority of the state?

Does this trooper's complete disregard for highway patrol policy, for his duty to protect the citizens of the state, and his lies make him unworthy and unfit for duty? Is laughing about the pain which he had wrongfully inflicted proper conduct for a trooper? It is obvious from the video that the trooper knew he had done something wrong because he felt it necessary to lie about the circumstances of his use of the taser. Why did Mr. Gardner fail to treat the wounds, photograph the injuries, or use gloves when removing the probes?

Additional concerns that should be addressed are (1) why the highway patrol took no action on this matter for over two months until the media was contacted. It seems to me the highway patrol should be interested in making sure that officers are not harming the public and that policies are being followed. It should not take an egregious case of abuse, such as this that catches media attention, to get action by the highway patrol; (2) why is the highway patrol violating the GRAMA law and failing to respond to my request for information? Then when the video was provided, it was provided in a scrambled format and had to be professionally unscrambled in order to view.

The actions of Trooper Gardner give the highway patrol as well as all law enforcement a black eye and bring into question whether law enforcement officers should be allowed to use tasers. They do bring about the possibility of death, serious injury and at least in the case of Mr. Gardner are used more for laughs and a power trip than for any legitimate law enforcement purpose.

I welcome the belated investigation by the highway patrol into this matter and request that Trooper Gardner be justly punished. I also request that those who have participated in the cover up of his misconduct to be disciplined and that other actions be taken to assure the public that this type of abuse by a highway patrol officer will not be allowed to occur and will not be covered up if it does occur in the future.

As you consider this matter please answer these questions:

(1) Did Trooper Gardner follow highway patrol policy?

(2) Does highway patrol policy have any meaning and effect?

(3) Is this the image you want of Utah Highway Patrol Troopers?

(4) Do you want Trooper Gardner pulling over your wife or grandchild and giving them a "ride on the taser?"

(5) Can Gardner be an effective witness in any trial after he has shown a propensity to be untruthful?

(6) Is Trooper Gardner protecting and serving citizens, or conquering and controlling them?

(7) Are those sworn to uphold the law exempt from the law?

(8) Should Gardner be prosecuted for criminal assault?

(9) If Trooper Gardner is allowed to remain a Trooper, what message does this send to the public and to other law enforcement officers?

I hope the Utah Highway Patrol and Department of Public Safety will finally take appropriate action. This matter would have not gone public had something been done when I reported it to supervisory personnel immediately after the incident. Now it is on every local and national news media outlet as well as being viewed hundreds of thousand of times on YouTube. Thank goodness for modern technology and for a free press that allows this type of abuse to be brought to light and hopefully now something will be done.

Sincerely,

Jared Massey